**In re John WHEELER, Debtor.**

**Bankruptcy No. 80–01509A.**

United States Bankruptcy Court,
N. D. Georgia,
Atlanta Division.

Aug. 11, 1980.

---

Joyce Bihary, Rogers & Hardin, Atlanta, Ga., for petitioner.

Irma B. Glover, Sams, Glover & Gentry, Gary Eubanks, Smith, Eubanks & Smith, Marietta, Ga., for respondent.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

On May 6, 1980, the debtor herein filed an application to set aside a purported foreclosure on the debtor's residence by United Federal Savings and Loan Association (hereinafter "United"). A hearing was held on this application on May 22, 1980. At the conclusion of the hearing, the Court invited the parties to submit briefs and took the matter under advisement.

## FINDINGS OF FACT

1.

On or about March 18, 1980, United notified the debtor that it intended to foreclose pursuant to its notice and deed to secure debt on the debtor's residence at 1404 Forest Drive, Smyrna, Georgia, unless the debtor paid the loan balance on the note which was approximately $30,000.

2.

The foreclosure was scheduled to take place on May 6, 1980.

3.

At approximately 9:30 a. m. on May 6, 1980, the debtor's attorney notified United that the debtor would be filing that day a petition for relief under Chapter 13 of the Bankruptcy Reform Act of 1978.

4.

United conducted a foreclosure sale on the property in question on the steps of the Cobb County Court House at 10:05 a. m. May 6, 1980. At that sale, United accepted a bid by a Mr. Ken Newkirk in the amount of $35,000.00.

5.

At 10:34 a. m. on May 6, 1980, the debtor filed a Chapter 13 petition in this Court.

6.

At approximately 11:00 a. m. on May 6, 1980, the debtor's attorney telephoned the attorney for United and advised him that the petition had been filed and that all further action with respect to property of the debtor's estate was stayed.

7.

At approximately 11:45 a. m., Mr. Newkirk delivered to the attorney for United $35,000 and the attorney for United delivered to Mr. Newkirk a deed from United purporting to deed the property in question to Mr. Newkirk.

8.

This deed was filed for the purpose of recording with the Clerk of the Superior Court of Cobb County prior to 12:15 p. m.

9.

The attorney for United never advised Mr. Newkirk that the debtor had filed a petition under Chapter 13 or that he had had two phone conversations with the debtor's attorney that morning.

10.

At approximately 1:30 p. m., the attorney for the debtor filed an application to set aside the foreclosure.

11.

At approximately 2:00 p. m., this Court entered an Order restraining United and Mr. Newkirk from taking any further action to transfer the property in question until further order of the Court.

12.

At 2:45 p. m., the deed purporting to transfer the property from United, as attorney in fact for the debtor, to Mr. Newkirk was recorded.

13.

The property has a fair market value of $70,000.00.

## CONCLUSIONS OF LAW

The debtor argues that:

"The actions of United and Mr. Newkirk were in violation of the automatic stay provided for in section 362 of the Bankruptcy Act of 1978, and these actions were intended to have and did have the effect of depriving the Debtor and the general creditors of the substantial equity in the property, which equity is the only significant asset in this estate." Debtor's Brief p. 4.

The issue in this case is whether the actions of United and Mr. Newkirk, in fact, violated 11 U.S.C. § 362. The debtor states that the foreclosure was an "attempt to obtain possession of Property" of the debtor and, by implication, that it violated 11 U.S.C. § 362(a)(3). This section states in material part:

"A petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

(3) any act to obtain possession of property of the estate or of property from the estate." 11 U.S.C. § 362(a)(3).

█ In determining whether or not the actions of United and Mr. Newkirk violated this section, it is necessary to analyze the language of the section. It first must be noted that a petition does not operate as a stay until it is filed. *In re Robertson,* 4 B.R. 213, 6 BCD 375 (Bkrtcy.Ct.D.Col.1980); *In re Butchman,* 4 B.R. 379, 6 BCD 403 (Bkrtcy.Ct.S.D.N.Y.1980). In this case the stay commenced at 10:34 a. m. on May 6, 1980. The effect of the stay was to enjoin "any act to obtain possession of property of the estate or property from the estate." The term "property of the estate" is defined as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

This raises the question whether these interests are to be determined exclusively by reference to state law or by reference to some type of bankruptcy or federal common law interest which may be property of the estate. The Bankruptcy Code gives no answer as to which view is proper. However, the failure to refer specifically to some federal equity interest indicates that there is no such interest. As the Supreme Court has stated:

"Apart from these provisions [specific exceptions], however, Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979).

Furthermore, the legislative history of § 541 indicates that Congress intended that the property of the estate be defined by state law. It states that:

"it [§ 541] is not intended to expand the debtor's rights against others more than they exist at the commencement of the case." H.R.Rep.No. 95–595, 95th Cong., 1st Sess. (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6323, Appendix 2 *Collier on Bankruptcy,* p. 367 (15th ed. 1980).

This statement is tautological unless it is read to mean "as they exist *under state law* at the commencement of the case."

█ The reported cases which have faced the issue of the effect of a foreclosure on property of the estate under the Bankruptcy Code have also defined property of the estate in terms of state law. *In re Robertson, supra; In re Butchman, supra.* This Court agrees and finds that the issue of what is property of the estate must be determined by reference to state, not federal law.

█ To determine whether United and Newkirk committed "any act to obtain property of the estate or property from the estate", the Court must look to the Georgia law on foreclosure. In Georgia the grantee under a deed to secure debt, in this case United, holds legal title to the property in question. *Lively v. Oberdorfer,* 216 Ga. 673, 119 S.E.2d 27 (1961). United also held a power of sale. "A power of sale is a trust." *Coleman v. Cabaniss,* 121 Ga. 281, 48 S.E. 927 (1904). The rights which remained vested in the debtor have been called an equitable estate.

"The grantor in such a deed retains the right of possession and the right of redemption by payment of the debt, and consequently an equitable estate in the land which may be assigned or subjected to payment of his debts." *Citizen's Bank of Moultrie v. Taylor,* 155 Ga. 416, 117 S.E. 247 (1923).

United and Mr. Newkirk argue that when United, acting as attorney for the debtor, exercised the power of sale in the deed by accepting Mr. Newkirk's bid, this equitable

estate passed from the debtor to Mr. Newkirk. While this argument has the ring of truth, it fails to explore the nature of this equitable estate.

No reported Georgia cases have been found which explain the nature of this equitable estate as it relates to the intervention of a bankruptcy filing. It appears to this Court that what the buyer at a judicial sale or a sale under a power of sale receives is the right to enforce a contract. *Penny v. Cash*, 201 Ga. 215, 39 S.E.2d 397 (1946). However, the contract must be just.

> "In order for a decree of specific performance to stand, it must appear that the contract sought to be enforced was equitable and just. This court has repeatedly held that in order for a suit for specific performance of a contract for the sale of land to prevail, the plaintiff must prove the value of the property so as to enable the court to determine that the contract was fair, just and not against good conscience." *Moody v. Mendenhall*, 238 Ga. 689, 692–3, 234 S.E.2d 905, 908 (1977). [citations omitted]; *Jones v. Dallas*, 243 Ga. 124, 125, 252 S.E.2d 603 (1979).

Under Georgia law, the only thing that passed to Mr. Newkirk when his bid was accepted was the right to enforce a contract for sale of the property if he could prove that "the contract was fair, just and not against good conscience."[1] This left in the debtor a property right which could be called the "equity of redemption", subject to Mr. Newkirk's right of specific performance. That is, there was, at the time that the automatic stay went into effect, property of the estate in the real estate in question. Therefore, the actions of United in delivering the deed to Mr. Newkirk and accepting the check for $35,000 in payment for the property were acts "to obtain property from the estate" in violation of the automatic stay.

"Actions taken in violation of the automatic stay are void and without ef-

fect." 2 *Collier on Bankruptcy* ¶ 362.11 p. 362–56 (15th ed. 1980), and cases cited therein. This means that the delivery of the deed, the acceptance of the check, and the recording of the deed were all void actions and without legal effect.

11 U.S.C. § 549(a) provides for the avoidance of transfers of property of the estate which are not authorized either by title 11 or by the court. 11 U.S.C. § 549(c) provides protection for persons in Mr. Newkirk's position. It states in relevant part:

> "A good faith purchaser, without knowledge of the commencement of the case and for less than present fair equivalent value, of real property located other than in the county in which the case is commenced, under a transfer that the trustee may avoid under this section, has a lien on the property transferred to the extent of any present value given, unless a copy of the petition was so filed before such transfer was so perfected." 11 U.S.C. § 549(c).

In this case, Mr. Newkirk, despite having paid less than the present fair market value of the property, has a lien to the extent of $35,000 on the property.

It is hereby ORDERED and ADJUDGED that the deed purporting to transfer the property in question to Mr. Newkirk is void.

It is FURTHER ORDERED and ADJUDGED that Mr. Newkirk shall retain a lien on the legal title to the property held by United in the amount of $35,000.

It is FURTHER ORDERED and ADJUDGED that the equity of redemption and right of possession of the property in question is and shall be held by the debtor for the benefit of his creditors.

---

1. The Court notes in passing that the evidence indicates that the value of the property was $70,000 and the purchase price paid by Mr. Newkirk was $35,000.00.